UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| BITUMINOUS CASUALTY CORP., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:12-CV-84-SNLJ |
| | ) | |
| SCOTTSDALE INSURANCE CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff's motion for summary judgment (#60). The matter is fully briefed and is ripe for disposition.

### I. Factual Background

The following facts are undisputed except where indicated. This matter arises out of a dispute regarding insurance coverage for alleged damage to property owned by David and Jacqueline Retherford. The Retherfords filed suit against their neighbors, Brent and Selena Irwin on May 15, 2008, in Missouri state court (the "underlying action" or "underlying state court action"). The Retherfords allege that Brent Irwin, who operated a land grading company, orally agreed to grade the Retherfords' farmland in time to plant crops in the spring of 2006. The Retherfords state that they paid Irwin for the grading on March 28, May 1, June 1, and June 19, 2006, but that Irwin improperly graded the farmland and ultimately abandoned the job without completing it. As a result, the Retherfords allege that their relationship with the Irwins deteriorated. They allege that Irwin threatened to and did in fact alter the banks of a creek/drainage ditch on Irwin's own property such that the ditch overflowed into the Retherfords'

land rather than flowing through the ditch and into the Castor River. The underlying action also alleges that Irwin improperly constructed two ponds on his property such that water now drains through the Retherfords' fields and not through existing ditches and drains. As a result of all these alleged misdeeds, the Retherfords state they were unable to plant their crops and suffered lost profits for several years. The underlying action sets forth eight counts: (1) breach of contract as a result of the defective grading, (2) private nuisance resulting from the destruction of the ditch banks, (3) injunction requiring Irwin to abate the damage to the ditch, (4) private nuisance caused by improper pond construction, (5) injunction requiring Irwin to abate the damages to the pond, (6) breach of contract as a result of Irwin's failure to pay Retherford for parts and oil, (7) trespass for which Retherford seeks actual and punitive damages, and (8) deed reformation to address the issue of the Retherfords' access to a roadway on the Irwins' property.

The Court takes judicial notice of the state court's entry of judgment in the underlying action September 23, 2013. *Retherford v. Irwin*, No. 08 BO-CC 12, slip op. (Cir. Ct. Bollinger Co. Sept. 23, 2013) (the "Judgment"). That state court Judgment may be summarized as follows:

1. The state court found in favor of the Retherfords and against Irwin on Counts 1, 2, 3, 4, 5, and 7, and awarded the Retherfords $99,500.00 in damages.

2. The state court awarded injunctive relief on Counts 3 and 5, requiring Irwin to fix the creek banks and ponds so that they do not cause damage to the Retherford property.

3. The state court entered judgment in favor of Irwin on Counts 6 and 8.

4. No punitive damages were awarded.

Brent Irwin, doing business as Irwin Land Grading, had an insurance policy in effect from October 28, 2005 to July 1, 2006 with plaintiff Bituminous Casualty Company (the "Policy"). The Policy is a commercial general liability policy with effective dates of October 28, 2005 to July 1, 2006. The Policy covers damages due to "bodily injury" or "property damage" that is "caused by an 'occurrence' that takes place" . . . "during the policy period." The Policy excludes coverage for, among other things, bodily injury or property damage that was "expected or intended from the standpoint of the insured." The Policy states that the "insureds" include the Irwins "only with respect to the conduct of a business of which you are the sole owner." In addition, "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Irwins made a claim under the Policy to Bituminous, but Bituminous contends that its Policy does not provide coverage for the Retherfords' claims. Bituminous filed suit in this Court and named as defendants Brent and Selena Irwin, the Retherfords, Scottsdale Insurance Company, and Farmers Insurance Company. The Amended Complaint (#40) contains three counts: Count I seeks a declaratory judgment that the damages alleged by the Retherfords in the underlying action are not covered by Bituminous's Policy with Irwin; Counts II and III seek declaratory judgments that Bituminous is owed equitable contribution by Scottsdale Insurance Company and Farmers Insurance Company, both of which allegedly provided insurance coverage to the Irwins during times relevant to the Retherfords' action. Plaintiff moved for summary judgment soon after filing its complaint, and the motion states that it seeks a declaration that

plaintiff has no duty to defend or indemnify the Irwins in the underlying action. The motion for summary judgment and its accompanying memorandum appears to apply only to Count I.[1]

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). Because "the interpretation and construction of insurance policies is a matter of law, ... such cases are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991).

Because this is a diversity case, the Court applies state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). The Court's interpretation of an insurance policy in a diversity case is governed by state law. *St. Paul Fire & Marine Ins. Co. v. Missouri United Sch. Ins. Council*, 98 F.3d 343, 345 (8th Cir. 1996). The parties appear to agree that Missouri law applies in this instance.

## III. Discussion

The Court will discuss each of the underlying eight counts separately. Generally, though, an "insurer's duty to defend a suit against its insured is determined by the language of the policy and the allegations asserted in the plaintiff's petition. Under Missouri law the plaintiff has the

---

[1]The memorandum (#62) states that the plaintiff requests "the declaratory relief prayed for in Plaintiff's Complaint for Declaratory Judgment." However, plaintiff set forth no facts or argument for entry of judgment on Counts II or III.

burden of showing that the loss and damages are covered by the policy; the defendant insurer has the burden of demonstrating the applicability of any exclusions on which it relies." *Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo. Ct. App. 1998) (internal citation to *Scottsdale Ins. Co. v. Ratliff*, 927 S.W.2d 531, 532 (Mo. Ct. App. 1996) omitted).

"The 'cardinal rule' for contract interpretation is to 'ascertain the intention of the parties and to give effect to that intention.' The parties' intent is presumptively expressed by the 'plain and ordinary meaning' of the policy's provisions, which are read "in the context of the policy as a whole." *Secura Ins. v. Horizon Plumbing, Inc.*, 670 F.3d 857, 861 (8th Cir. 2012) (quoting and citing *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973); *Mo. Emp'rs Mut. Ins. Co. v. Nichols*, 149 S.W.3d 617, 625 (Mo. Ct. App. 2004); *Mathis*, 974 S.W.2d at 649.

The Court notes that the intent of commercial general liability policies such as the one at issue here "is to protect against the unpredictable and potentially unlimited liability that can result from accidentally causing injury to other persons or their property." *Mathis*, 974 S.W.2d at 649, *quoted in Secura*, 670 F.3d at 862. "A commercial general liability policy is not intended to protect business owners against every risk of operating a business." *Mathis*, 974 S.W.3d at 649. Coverage for each of the eight underlying counts is discussed below.

    **A.    Count 1: Breach of Contract as Result of the Defective Grading**

In the underlying Count 1, the Retherfords allege that Irwin breached his oral contract with the Retherfords when he improperly graded the Retherfords' farmland. Plaintiff Bituminous contends that because a "breach of contract" is not an occurrence under the policy, Count 1 is not covered by the policy.

5

The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." It is well-settled that breaches of contracts are not "accidents" or "occurrences" for the purpose of insurance contracts. *Mathis*, 974 S.W.2d at 650. Defendants argue that the underlying complaint includes allegations of numerous occurrences in the "Common Count," which is incorporated into Count 1. The Retherfords, for example, contend that the "occurrences" alleged in the "Common Count" include the following:

- Irwin's 2006 removal of the ditch bank and spoil, which caused harm to the Retherfords' farm

- Irwin's defectively building two ponds, which caused harm to the Retherfords' farm.

But neither of those supposed "occurrences" were the subject matter of the contract between Retherford and Irwin. The only contract mentioned in the Common Count is the March 2006 contract in which Irwin promised to grade Retherford's farmland. The breach of contract is described as follows in Paragraph 24:

> 24. Irwin breached his contract with David Retherford, Jr. for grading as follows:
> (a) Rather than putting a fall of approximately 1 3/4" to 2" per each 100 linear feet, Irwin flat graded the land.
> (b) Irwin's grading did not fill the low places ... resulting in ponding of water....
> (c) Irwin did not fill ditches and low spots.
> (d) The grading was not uniform.
> (f) [*sic*] Irwin failed to install tail ditches on the graded land.
> (g) Irwin failed to complete the grading in time for planting.
> (h) Irwin left the Retherford job and did other excavating work instead of completing the grading as promised.

The damages from "these breaches in the grading contract" were that Retherford was unable to plant a viable crop in 2006, Retherford had to hire others to perform the work for which he paid Irwin, Retherford has been unable to produce reasonably expected crop yields in 2007 and 2008.

Defendant Farmers Insurance argues that the lost crops and flooding were accidental and thus constitute an "occurrence." But the plain meaning of "accident" as determined by Missouri courts is "[a]n event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event." *Mathis*, 974 S.W.2d at 650, *quoted in Secura*, 670 F.3d at 862. Here, the flooding and crop losses were not such an accident: they were caused by (and were a foreseeable consequence of) Irwin's defective work. For example, in *Mathis*, an insurance dispute regarding an underlying breach of contract case, the underlying allegation was that the insured did not install underground ductwork according to the contract, and the insured argued that its insurance carrier should cover the underlying plaintiff's claim. The court held that "this breach did not cause an unintended accident to other property. . . . That the electrical conduit and cables had to be torn out and replaced...was a normal, expected consequence of [insured contractor's] breach of contract and not an occurrence." *Id.* at 650. Although the analysis of this matter is at least superficially complicated by the presence of numerous allegations pertaining to Irwin's other acts causing harm to the Retherford property, Missouri law is clear that breaches of contract are not occurrences. Count 1 is explicitly for breach of contract, and breach of contract is not an occurrence covered by the Policy. As a result, plaintiff Bituminous has neither a duty to defend nor a duty to indemnify the Irwins with respect to Count 1 of the underlying complaint.

B.     **Count 2: Private Nuisance From Destruction Of the Ditch Banks**

Count 2 in the underlying action is for "Damages Caused by Destruction of Ditch Bank / Continuing Private Nuisance." That Count incorporates the Common Count and then states that

"The act of Irwin removing the ditch/creek bank and spoil were done intentionally, with legal malice and with either a reckless disregard or knowing and intentional purpose to injure the Retherfords and the Retherford Farm." (Doc. #38-3 at ¶ 58.) Count 2 seeks actual damages of $25,000 and punitive damages. In the Common Count, the Retherfords allege that their relationship with Irwin "became acrimonious as a result of the breaches of contract and Irwin's refusal to perform the promised grading." (*Id.* at ¶ 26.) The Retherfords allege that during one of Retherford's arguments with Irwin, "Irwin threatened to open a ditch, sometimes called the creek, running through the Irwin Farm generally from the west to the east into and through the Retherford Farm." (*Id.* at ¶ 27.) "Sometime in the years 2006, 2007 and 2008, Irwin took his excavating equipment and removed the bank and spoil from the ditch/creek for approximately 160 feet." (*Id.* at ¶ 32.) The Retherfords alleged that Irwin knew that doing so would cause water in the ditch to jump its lowered banks and travel through the Retherford Farm instead of the ditch. (*Id.* at ¶ 33.)

      Plaintiff contends that the Policy does not cover Count 2 because —

- it seeks relief for damages that occurred outside the Policy period; and
- the destruction of the ditch banks constitutes intentional and/or individual conduct is not covered by the Policy.

Starting with whether Count 2 pertains to damages that occurred during the Policy period, plaintiff is obligated to pay damages because of property damage caused by an "occurrence" that happened during the Policy period. The Policy period is October 28, 2005 to July 1, 2006. Plaintiff argues that because the Retherfords' damages from Irwin's alterations to the ditch — loss of use and impairment of their property — were not discovered until after July 1, 2006, the Policy does not cover this claim.

"The general rule in Missouri is that the time of an occurrence of an event in an indemnity policy is not when the wrongful act is committed but when the complaining party is actually damaged." *City of Lee's Summit v. Missouri Pub. Entity Risk Mgmt.*, 390 S.W.3d 214, 220 (Mo. App. W.D. 2012). The defendants contend that because the Retherfords' damages stem from a "progressive-type injury," the standard for the trigger of coverage here is the standard used for progressive or continuing injury. "[A]n occurrence-type policy, such as the [Policy] at issue in this case, covers cases of progressive injury where the cause of the damage is present during the policy period but the damage is not apparent until after the policy period." *D.R. Sherry Const., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 905 (Mo. banc 2010). Notably, however, "[f]or an event to be a covered occurrence, the time of first actual damage must be within the effective dates of the policy." *Lee's Summit*, 390 S.W.3d at 220. Although it is true that matters of property damage such as this one differ from products liability matters analytically, *see, e.g.*, *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 394 (Mo. App. E.D. 2007),[2] it is still true that the actual damage must have occurred during the policy period. *Lee's Summit*, 390 S.W.3d at 220.

The defendants contend that there is at least a question of fact as to whether Irwin removed the ditch bank and spoil, and that such acts caused damage to the Retherfords, during the Policy period. Plaintiff says it does not matter — plaintiff points out that the underlying complaint does not allege facts that support that Retherford was damaged during the Policy period. "In determining whether there is a duty to defend, a court is barred from reading into a complaint any factual assumptions." *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d

---

[2]*Stark* contrasts insurance cases that address property damages versus physical injuries from negligently designed products.

9

539, 542 (8th Cir. 2012) (quoting *Penn–Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 599 (Mo. Ct. App. 2010). On the other hand, "as long as the petition demonstrates the potential or possible statement of a claim within insurance coverage, even if inartfully drafted, it triggers the insurer's duty to defend." *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 83 (Mo. Ct. App. 2005). The underlying complaint reflects a possibility that Retherford was actually damaged during the Policy period, thus there existed a duty to defend. In addition, there is at least a fact question surrounding when the Retherfords were damaged, thus there is, potentially, a duty to indemnify.

Regardless, plaintiff contends that the Irwins cannot demonstrate that the Policy covers Count 2 because the Policy states that the insureds include Irwin "only with respect to the conduct of a business of which you are the sole owner." The underlying complaint does not contain allegations that indicate Irwin acted for Irwin Land Grading when he removed the ditch bank and spoil on his own property. The Court notes, however, that the underlying complaint did not even mention the name Irwin Land Grading, and it mentioned Irwin's business only once, stating that "Irwin is in the business of grading farmland and various other types of excavation work." (#38-3 at ¶ 17.) Irwin suggests that there is at least a question of fact as to whether or not he acted on behalf of his business or himself. Although it seems unlikely that Irwin's removal of the ditch bank and spoil on his own property was business-related, the underlying complaint leaves open the possibility that Irwin's conduct was business related. Further, Irwin denies that he acted in his personal capacity in his Answer to Bituminous's Complaint. Thus plaintiff had a duty to defend and, possibly, to indemnify.

Finally, plaintiff contends that the Policy explicitly excludes from coverage property damage that was "expected or intended from the standpoint of the insured." (#40 at 5.) Missouri

10

law requires that for the exclusion to apply, "[i]t must be shown not only that the insured intended the acts causing the injury, but that injury was intended or expected from these acts." *Am. Family Mut. Ins. Co. v. Pacchetti*, 808 S.W.2d 369, 371 (Mo. banc 1991). As for the duty to defend, "[i]n addition to the allegations in the complaint, an insurer should consider whether other facts it knew, or could have learned from a 'reasonable investigation' at the time the lawsuit was filed, establish potential coverage." *Secura*, 670 F.3d at 861. Here, although the Retherfords' complaint alleges that Irwin removed the ditch bank and spoil for the purpose of damaging the Retherfords' farm, Irwin has steadfastly denied that he intended to cause the damages. Such a denial was reasonably available to Bituminous at the time Irwin made his claim under the Policy, and thus Bituminous's liability to pay was a possibility, and the duty to defend existed. Further, the state court found that "it was not the intention of Irwin to cause the damages" (Judgment at ¶ 14), so Bituminous cannot meet its burden to show that the exclusion applies in this case.

  C.  **Count 3: Permanent Injunction/Abatement -- Ditch Damage**

Count 3 seeks equitable remedies for the ditch damage complained of in Count 3. If there is no coverage for Count 2, then there is no coverage for Count 3. If there is coverage for Count 2, then whether there is coverage for Count 3 hinges on whether the Policy covers equitable remedies. The Policy states that plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Here, the state court judgment requires the Irwins to "restore the creek bank to its previous condition such that water will then be contained within the creek banks and not be allowed the overflow on to the Retherford Farm and that Irwin be required to maintain the creek bank in that condition." (Judgment at ¶ C.)

Plaintiff contends that "damages" do not include the cost of such restoration. The Missouri Supreme Court addressed a similar issue in *Farmland Indus., Inc. v. Republic Ins. Co.*, 941 S.W.2d 505, 509 (Mo. banc 1997). There, the insurance company refused to pay the insured's cost of government-ordered environmental remediation because it was not money damages. The Missouri Supreme Court held that the term "damages" as used in the insurance policy at issue covered the equitable relief because it was "a cost that [the insured] is legally obligated to pay as compensation or satisfaction for a wrong or injury." *Id.* Plaintiff says that, here, "the equitable relief sought by the Retherfords does not rise to the same level" as a government-ordered environmental cleanup. (Doc. #62 at 5.) But plaintiff fails to appreciate the ditch restoration has been court-ordered in order to remedy a wrong done to the Retherford Farm — it is not in the nature of fines or penalties, which would not be considered "damages" under its ordinary meaning. *See Farmland*, 941 S.W.2d at 510-11; *cf. State Farm Fire & Cas. Co. v. Nat'l Research Ctr. for Coll. & Univ. Admissions*, 445 F.3d 1100, 1104 (8th Cir. 2006) (holding that certain payments ordered to be paid to the state attorney general were "penalties" and did not constitute damages as did remedies like restitution and injunctive relief). Thus, the cost of such a remedy constitutes damages under *Farmland*.

Plaintiff also contends that the ditch remediation (and associated costs) should not be covered because they will occur outside the Policy period. In support, plaintiff cites a Minnesota case that held "[e]xpenditures to prevent future pollution of a type which has yet to occur or from a source which has yet to cause pollution, however, are not covered because these costs are not causally related to the property damage." *N. States Power Co. v. Fid. & Cas. Co. of New York*, 504 N.W.2d 240, 245 (Minn. Ct. App. 1993), *aff'd as modified*, 523 N.W.2d 657 (Minn. 1994). Those circumstances have not been pleaded here — to the extent the property to be remediated

was independently damaged outside the policy period, then there may not be coverage, but the Court has already held that those are issues yet to be determined in Count 2. Plaintiff's argument is therefore without merit. The Policy covers this sort of equitable relief.

### D. Count 4: Damage Caused by Pond Construction / Private Continuing Nuisance

Count 4 incorporates the Common Count and alleges that the two ponds that Irwin constructed constitute a private, continuing nuisance and have caused actual damages to the Retherfords exceeding $25,000. Plaintiff admits that Irwin testified he built the second pond in July 2005, months before the Policy period began in October 2005. The Retherfords alleged that — after that second pond was constructed — the ponds leaked constantly due to their defective construction and that it caused wet areas on the Retherfords' farm, rendering certain fields unusable or reducing crop yields. Retherford testified that he first complained to Irwin about the leaking ponds in May 2006, but the parties dispute when Retherford was damaged and whether property damage happened during the Policy term. Ultimately, the analysis for Count 2's ditch-damaging allegations applies equally to the ponds, with the notable exception that it does not appear that the Retherfords alleged that the Irwins intended to cause harm with their ponds. It is also unclear whether Irwin acted individually in or a business capacity, and so there is a question of fact as to whether coverage exists for this Count.

### E. Count 5: Permanent Injunction / Abatement Pond Damage

Count 5 seeks injunctive relief requiring Irwin to repair the ponds so that they do not leak and cause damage to the Retherford farm. Assuming there is coverage for Count 4, then whether there is coverage for Count 5 depends on whether equitable remedies are covered by the Policy. As with the Court's analysis regarding the ditch restoration in Count 3, pond restoration has been

court-ordered in order to remedy a wrong done to the Retherford Farm. Thus, the cost of such a remedy constitutes damages under *Farmland*, 941 S.W.2d at 509.

F.   **Count 6: Breach of Contract/Failure to Pay for Parts and Oil**

Defendant Irwin concedes that this Count is not covered by the Policy. As a result, plaintiff had no duty to defend or indemnify Irwin on this Count.

G.   **Count 7: Trespass**

The Retherfords allege that Irwin "has come on to land owned by Retherford, moved the roadway which was on the Retherford land, dug ditches alongside the road, destroyed part of the original road, removed trees and committed trespass and continues to trespass on the Retherford Farm." (¶ 90.) Retherford sought actual and punitive damages against Irwin, and the state court's $99,500 award was intended to compensate the Retherfords for all of Irwin's acts, including the trespass.

Plaintiff's motion appears to address Count 7 in two ways. First, plaintiff says punitive damages are not covered by the policy. Defendant Irwin does not contest that point, and it is moot because punitive damages were not awarded by the state court. Second, plaintiff states that all of the non-breach of contract counts are barred because they involve Irwin acting in his personal capacity. As discussed above, however, although it seems unlikely that Irwin acted in anything other than a personal, non-business capacity, a question of fact appears to exist as to that exclusion on the current record.

H.   **Count 8: Deed Reformation**

The state court found in favor of Irwin on this claim. Because plaintiff seeks a declaratory judgment stating that it had no duty to defend on this Count, though, the Court must determine whether "there is a potential or possible liability to pay based on the facts at the outset

14

of the case." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999) (quoting 13 John A. Appleman & Jean Appleman, *Insurance Law and Practice*, § 4684 (rev. vol. 1976)). The duty to defendant "is not dependant on the probable liability to pay based on the facts ascertained through trial." *Id.* Instead, "[t]he duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *Id.*

With respect to Count 8 for Deed Reformation, the relief requested is certainly equitable in nature. The underlying complaint alleges that the Irwins and Retherfords obtained their properties from the same grantor, that the parties intended the Retherfords to have in fee simple a roadway allowing access to the Retherford farm, but that such property was instead conveyed to Irwin. Further, "[a]s a result of this suit, Irwin has made the roadway ... inaccessible to the Retherfords," and the Retherfords do not have access to the farm. (¶¶ 102-3.) Although it is unclear to this Court just how the allegations of Count 8 fit with the rest of the Retherfords' allegations, the Retherfords plainly sought deed reformation as a remedy for an alleged mistake made during conveyance of the properties. The Retherfords' complaint suggest that the mistake may have been made due to Irwin's fraud, and the deed reformation is not punitive, so it appears that this equitable relief may constitute damages under *Farmland*, 941 S.W.2d at 509. In addition, once again, the entire complaint is unclear with respect to whether it makes allegations against Irwin in his personal or business capacity. Thus the possibility of liability existed, and plaintiff had a duty to defend.

IV.     **Conclusion**

The Court grants partial summary judgment to plaintiff Bituminous on its Count I on the underlying complaint's Counts 1 and 6. The Court holds that plaintiff Bituminous had a duty to

defend with respect to the underlying complaint's Count 8.  Bituminous's Count I remains for disposition with respect to the underlying complaint's Counts 2, 3, 4, 5, and 7.  Bituminous's Counts II and III also remain for disposition.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion for Summary Judgment (#60) is **GRANTED** in part and **DENIED** in part, in accordance with this memorandum.

Dated this   22nd   day of October, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE